

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 4:20CR 27 |
| v. | 18 U.S.C. §§ 1343 and 2<br>Wire Fraud<br>(Counts 1-4) |
| JOSEPH M. CHERRY, II, | |
| Defendant. | 18 U.S.C. §§ 641 and 2<br>Theft of Government Property<br>(Count 5) |
| | 18 U.S.C. §§ 1014 and 2<br>False Statements to Small Business Administration<br>(Counts 6 - 8) |
| | 18 U.S.C. §§ 1957 and 2<br>Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity<br>(Counts 9 - 10) |
| | 18 U.S.C. §§ 981(a)(1)(C) & 982(a)(1)<br>Asset Forfeiture |

## INDICTMENT

May 2020 Term - At Norfolk, Virginia

### GENERAL ALLEGATIONS

1. The United States Small Business Administration (SBA) is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

3. One of these new programs is the SBA Paycheck Protection Program (PPP), which is a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA will forgive all or part of loans if all employees were kept on the payroll for eight weeks and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants apply through an existing SBA lender or any other participating federally insured financial institution.

4. The PPP application process requires applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants are also required to make good faith certifications, including that economic uncertainties have necessitated their loan requests for continued business operations and that they intend to use loan proceeds only for the authorized and not any duplicative purposes.

5. Another related response to the COVID-19 outbreak is an expansion of an existing disaster-related program - the Economic Injury Disaster Loan (EIDL) - to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable

and other bills that could have been paid had the disaster not occurred; however, such loan proceeds are not intended to replace lost sales or profits or for expansion of a business.

6. Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including: information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

A. First EIDL Application

7. On or about March 30, 2020, JOSEPH M. CHERRY, II, the defendant herein (hereinafter "CHERRY"), electronically applied for an EIDL (loan number ending 872-04) using the company name of Global Concepts (doing business as "Joes Tortured Sol"), described as a limited liability company (LLC). CHERRY claimed that Global Concepts was located at 7**0 Tidewater Drive in Norfolk, Virginia, which is the address of a strip mall where a UPS Store is located. The application questions for the EIDL specified that the primary business address could not be a P.O. Box.

8. CHERRY claimed to have opened this business on July 1, 2015, and listed it as a clothing and apparel retail business with three (3) employees. Although CHERRY represented to the SBA that his business opened in 2015, CHERRY did not attempt to register this entity with the

3

Virginia State Corporation Commission (SCC) until January 5, 2020. This attempt was unsuccessful, and CHERRY successfully registered this business on April 8, 2020. On this second SCC registration, CHERRY used the address 1\*\*5 Fordham Dr. Virginia Beach, Virginia as the principal office address. This is a strip mall containing a UPS store.

9. Based on his EIDL application, CHERRY was offered loan proceeds of $197,000, of which $196,900 were related to claimed economic injury, with a $100.00 Uniform Commercial Code (UCC) filing fee. CHERRY provided an employer identification number (EIN) on the application that did not belong to Global Concepts. CHERRY further claimed his business had received $1,250,000 in gross revenue in the past twelve (12) months prior to the disaster and incurred cost of goods of $725,000. CHERRY responded in the negative to a question about whether he had been convicted, plead guilty or placed on any form of parole or probation related to any criminal offense other than a minor vehicle violation. In fact, CHERRY was currently serving a term of federal supervised release related to a prior federal conviction. Under the terms of this supervision, CHERRY was not permitted to obtain a loan or credit or open a bank account without permission.

10. Following the submission of this EIDL application, CHERRY regularly contacted the SBA for status updates from at least April 17, 2020, through and until the funding of the loan on April 23, 2020. CHERRY electronically signed a Loan Authorization and Agreement and other associated documentation on or about April 22, 2020. This agreement contained certifications that all representations in the EIDL application were "true, correct and complete and are offered to induce SBA to make this Loan[,]" and contained warnings of penalties for misapplication of proceeds and false statements or misrepresentations to the SBA.

11. On April 22, 2020, CHERRY opened a personal checking and savings accounts, member number (last four digits) 0837, with Langley Federal Credit Union (LFCU) in Norfolk, Virginia. At the same time, CHERRY also attempted to open a business account, advising an LFCU employee that he owned a business for several years. Langley Federal Credit Union, headquartered in Newport News, Virginia, is a financial institution (as defined under 18 U.S.C. § 1956) which operates in and the activities of which affect interstate commerce.

12. On April 24, 2020, CHERRY received a $196,900 Automated Clearing House (ACH) wire transfer from the United States Treasury for the EIDL (loan number ending 872-04). The $196,900 proceeds, which were routed electronically in interstate commerce, were deposited into CHERRY's LFCU checking account at LFCU in Newport News, Virginia.

13. On the same day, April 24, 2020, CHERRY withdrew $34,500 in cash and made a $296.77 purchase at an ABC Store. CHERRY conducted one $500 cash withdrawal at a PNC Bank Automated Teller Machine (ATM) and two $500 cash withdrawals at the LFCU Ward's Corner Branch ATM location, in Norfolk, Virginia. CHERRY then conducted a $33,000 cash withdrawal at the LFCU Old Dominion University (ODU) Branch located in Norfolk, Virginia. CHERRY advised the bank teller he was employed as a general contractor when withdrawing the $33,000. All of these transactions occurred from the LFCU account.

14. Also on April 24, 2020, at approximately 9:36 a.m., CHERRY changed the mailing address on his LFCU account to an address in Virginia Beach, Virginia. At 5:57 p.m. that same day, CHERRY changed the mailing address back to a Norfolk, Virginia address.

15. On April 25, 2020, CHERRY attempted to withdraw $9,700 in cash from at the Ward's Corner LFCU branch, but was turned away. CHERRY then returned to the ODU branch

and obtained a cashier's check for $70,000, made payable to Global Concepts of Virginia, LLC, and also withdrew $35,000 in cash. These withdrawals all occurred out of the LFCU account (member number ending in 0837). CHERRY advised a bank teller he was purchasing houses at auction and would return to the branch the following day to obtain the remaining $56,000.

B.   Second EIDL Application

16.   On April 3, 2020, CHERRY applied for a second EIDL, this time using the business name Contra Surplus LLC (hereinafter "Contra Surplus"). CHERRY listed the business address as 2** West 21st Street, in Norfolk, Virginia, which is a Pak Mail store in which CHERRY maintained a personal box in his name. CHERRY also indicated he employed five (5) individuals and received gross revenue of $1,600,000 in the past twelve (12) months prior to the disaster, with cost of goods sold of $1,300,000. CHERRY responded in the negative to a question about whether he had been convicted, plead guilty or placed on any form of parole or probation related to any criminal offense other than a minor vehicle violation.

17.   CHERRY contacted the SBA on or about April 27, 2020, stating he wanted to change the bank account information he had provided.

C.   PPP Application

18.   On April 5, 2020, CHERRY applied for a PPP loan through Readycap Lending, LLC, for Contra Surplus, and requested $35,000 in loan proceeds. On this application, CHERRY claimed that the business had ten (10) employees with an average monthly payroll of $10,000. CHERRY claimed that the purpose of the loan was for payroll and lease expenses.

19.   Question 5 of the PPP Borrower Application Form asked "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an

indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?" CHERRY responded "NO" to this question and electronically signed his initials on this documentation, verifying the accuracy of his response.

20.     Question 6 of the PPP Borrower Application Form asked "Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; 5) been placed on any form of parole or probation (including probation before judgment)?" CHERRY checked "NO" for this question and electronically signed his initials, verifying the accuracy of his response.

21.     CHERRY electronically signed this PPP application on April 5, 2020, attesting that the information provided was true and accurate and that he understood the criminal penalties associated with providing false statements to the SBA.

22.     According to the Virginia State Corporation Commission, CHERRY registered Contra Surplus on September 26, 2018. As of January 2, 2020, the business was inactive for not having paid the registration fee.

THE SCHEME AND ARTIFICE

23.     From on or about at least March 30, 2020 to at least in or about May 2020, in the Eastern District of Virginia and elsewhere, JOSEPH M. CHERRY, II, the defendant herein, devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises and omissions.

24. It was a part of the scheme and artifice that the defendant sought to fraudulently obtain disaster-related benefits in the form of SBA-sponsored Economic Injury Disaster (EIDL) loans and an SBA Paycheck Protection Program (PPP) loan.

25. It was further a part of the scheme and artifice that the defendant submitted applications for loans under the EIDL and PPP programs that contained false statements, misrepresentations and omissions related to the defendant's income, employment, claimed business entities and his prior criminal record.

26. It was further a part of the scheme and artifice that the defendant falsely attested on the aforementioned loan applications that the information presented was true and accurate.

27. It was a further a part of the scheme and artifice that the defendant opened a bank account at Langley Federal Credit Union (LFCU) for the purposes of receiving EIDL proceeds.

28. It was further a part of the scheme and artifice that the defendant received and obtained $196,900 in EIDL proceeds into a LFCU account.

29. It was further a part of the scheme and artifice that the defendant misapplied the EIDL proceeds for purposes unrelated to those authorized by the United States Small Business Administration.

30. It was further a part of the scheme and artifice that the defendant sought to spend the majority of the EIDL proceeds within days of receipt, including withdrawing significant sums of cash and obtaining a cashier's check for $70,000.

31. It was further a part of the scheme and artifice that the defendant caused the transmission of information and funds by wire between the Eastern District of Virginia and locations outside of the Commonwealth of Virginia.

## COUNTS ONE THROUGH FOUR
(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the transactions described below, JOSEPH M. CHERRY, II, the defendant herein, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false, fraudulent and fictitious pretenses, representations and promises, as described in Paragraphs 23-31 above and incorporated herein by reference, and, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, in the Eastern District of Virginia and elsewhere, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, the following certain signs, signals, and sounds: to wit, the following loan Economic Injury Disaster Loan (EIDL) and SBA Paycheck Protection Program (PPP) applications and a wire transfer of funds to/from/through a location within the Eastern District of Virginia to/from/through a location outside of the Commonwealth of Virginia.

| Count | Date of Wire Transmission (on or about) | Description of Wire Transmission |
|---|---|---|
| 1 | 3/30/2020 | Defendant submitted an EIDL application to the SBA for Global Concepts (loan number ending 872-04) that contained false statements and misrepresentations and omissions related to his business entity, employment, income and background. |
| 2 | 4/3/2020 | Defendant submitted an EIDL application (application number ending 0346) to the SBA for Contra Surplus that contained false statements and misrepresentations and omissions related to his business entity, employment, income and background. |

9

| | | |
|---|---|---|
| 3 | 4/5/2020 | Defendant submitted an SBA PPP loan application (last four digits 5483) through Readycap Lending, LLC for Contra Surplus that contained false statements and misrepresentations and omissions related to his business entity, employment, income and background. |
| 4 | 4/24/2020 | Defendant received the proceeds of EIDL (loan number ending 872-04) in the amount of $196,900 into a Langley Federal Credit Union account he had opened (member number ending in 0837). |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE
(Theft of Government Property)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. On or about April 24, 2020, in the Eastern District of Virginia and elsewhere, JOSEPH M. CHERRY, II, the defendant herein, having devised the scheme and artifice described in Paragraphs 23-31 above and incorporated herein by reference, willfully and knowingly did steal, purloin, and knowingly convert to his use without authority, money aggregating in excess of $1,000.00 belonging to the United States of America, to wit, approximately $196,900.00 in Economic Injury Disaster Loan (EIDL) assistance provided for by the United States Small Business Administration via the United States Treasury, in response to the COVID-19 outbreak, which the defendant was not entitled to receive.

(In violation of Title 18, United States Code, Sections 641 and 2.)

## COUNTS SIX THROUGH EIGHT
(False Statements to the Small Business Administration)

THE GRAND JURY CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the loan applications set forth below, in the Eastern District of Virginia and elsewhere, JOSEPH M. CHERRY, II, the defendant herein, knowingly made false statements and reports for the purpose of influencing the action of the Small Business Administration (SBA) and an SBA-preferred financial entity and lender, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, as follows:

| Count | Date (on or about) | False Statement |
|---|---|---|
| 6 | 3/30/20 | CHERRY claimed he had not been placed on any form of probation related to a criminal offense on an application for an Economic Injury Disaster Loan (EIDL). |
| 7 | 4/3/2020 | CHERRY claimed he had not been placed on any form of probation related to a criminal offense for an Economic Injury Disaster Loan (EIDL). |
| 8 | 4/5/2020 | CHERRY claimed he had not been placed on any form of probation related to a criminal offense on application for a Paycheck Protection Program (PPP) loan. |

(In violation of Title 18, United States Code, Sections 1014 and 2.)

## COUNTS NINE AND TEN
(Engaging in Monetary Transactions in Criminally Derived Property)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. On or about the following dates and in the manner described below, in the Eastern District of Virginia and elsewhere, JOSEPH M. CHERRY, II, the defendant herein, did knowingly engage and attempt to engage in the following monetary transactions by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, money deposits which represented fraudulently obtained disaster-related loan proceeds, such property having been derived from a specified unlawful activity, that is Wire Fraud, Theft of Government Property and False Statements to the Small Business Administration, in violation of Title 18, United States Code, Sections 1343, 641 and 1014, respectively:

| Count | Date (on or about) | Financial Transaction |
|---|---|---|
| 9 | 4/24/2020 | CHERRY conducted a $33,000 cash withdrawal from account (member number ending in 0837) at the Langley Federal Credit Union Old Dominion University branch. |
| 10 | 4/25/2020 | CHERRY obtained a $70,000 cashier's check using funds from account (member number ending in 0837) and made payable to Global Concepts of Virginia, LLC at the Langley Federal Credit Union Old Dominion University branch. |

(In violation of Title 18, United States Code, Sections 1957 and 2.)

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in Counts One through Two and Counts Four through Seven of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. The defendant, if convicted of either of the violations alleged in Counts Three and Eight of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of the violation.

3. The defendant, if convicted of either of the violations alleged in Counts Nine and Ten of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, involved in the violation, and any property traceable to such property.

4. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

5. The property subject to forfeiture includes, but is not limited to, the following:

    a. A monetary judgment an amount representing the proceeds the defendant obtained from the scheme alleged in this indictment.

> A sum of money of at least $196,900 which represents the proceeds of the offenses charged in Counts one through Eight that the defendant obtained and that, upon entry of an order of forfeiture, shall be reduced to a monetary judgment.

(All in accordance with Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 982(a)(2)(A); and Title 28, United States Code, Section 2461(c).)

*[Stamp, partially legible:]* E-Government Act, ... has ... filed under seal in the Clerk's Office.

UNITED STATES v. JOSEPH M. CHERRY, II, 4:20CR_27_

A TRUE BILL:

_____
FOREPERSON

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: _____*[signature]*_____
Brian J. Samuels
Assistant United States Attorney
Virginia State Bar No. 65898
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866

16