IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

```
FILED
IN OPEN COURT

OCT 2 3 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:20cr27 |
| | ) | |
| JOSEPH M. CHERY, II, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

If this matter were to proceed to trial, the United States of America would prove beyond a reasonable doubt, by competent and admissible evidence, the following facts:

1.     The United States Small Business Administration (SBA) is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.   The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2.     As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders.   These loans have government-backed guarantees.   In addition to traditional SBA funding programs, The CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

3.     One of these new programs is the SBA Paycheck Protection Program (PPP), which is a loan designed to provide a direct incentive for small businesses to keep their workers on the

1

payroll. Under this program, the SBA will forgive all or part of loans if all employees were kept on the payroll for eight weeks and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants apply through an existing SBA lender or any other participating federally insured financial institution.

4.      The PPP application process requires applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants are also required to make good faith certifications, including that economic uncertainties have necessitated their loan requests for continued business operations and that they intend to use loan proceeds only for the authorized and not any duplicative purposes.

5.      Another related response to the COVID-19 outbreak is an expansion of an existing disaster-related program - the Economic Injury Disaster Loan (EIDL) - to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds are not intended to replace lost sales or profits or for expansion of a business.

6.      Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including: information as to the gross revenues for the business prior to January 31, 2020; the cost of goods

2

sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

A.   First EIDL Application

7.     On or about March 30, 2020, JOSEPH M. CHERRY, II, the defendant herein (hereinafter "CHERRY"), electronically applied for an EIDL (loan number ending 872-04) using the company name of Global Concepts (doing business as "Joes Tortured Sol"), described as a limited liability company (LLC). CHERRY claimed that Global Concepts was located at 7**0 Tidewater Drive in Norfolk, Virginia, which is the address of a strip mall where a UPS Store is located. The application questions for the EIDL specified that the primary business address could not be a P.O. Box.

8.     CHERRY claimed to have opened this business on July 1, 2015, and listed it as a clothing and apparel retail business with three (3) employees. Although CHERRY represented to the SBA that his business opened in 2015, CHERRY did not attempt to register this entity with the Virginia State Corporation Commission (SCC) until January 5, 2020. This attempt was unsuccessful, and CHERRY successfully registered this business on April 8, 2020. On this second SCC registration, CHERRY used the address 1**5 Fordham Dr. Virginia Beach, Virginia as the principal office address. This is a strip mall containing a UPS store.

9.     Based on his EIDL application, CHERRY was offered loan proceeds of $197,000, of which $196,900 were related to claimed economic injury, with a $100.00 Uniform Commercial Code (UCC) filing fee. CHERRY provided an employer identification number (EIN) on the

3

application that did not belong to Global Concepts.   CHERRY further falsely claimed his business had received $1,250,000 in gross revenue in the past twelve (12) months prior to the disaster and incurred cost of goods of $725,000.   CHERRY responded in the negative to a question about whether he had been convicted, plead guilty or placed on any form of parole or probation related to any criminal offense other than a minor vehicle violation.   In fact, CHERRY was currently serving a term of federal supervised release related to a prior federal conviction. Under the terms of this supervision, CHERRY was not permitted to obtain a loan or credit or open a bank account without permission.

10.     Following the submission of this EIDL application, CHERRY regularly contacted the SBA for status updates from at least April 17, 2020, through and until the funding of the loan on April 23, 2020.   CHERRY electronically signed a Loan Authorization and Agreement and other associated documentation on or about April 22, 2020.   This agreement contained certifications that all representations in the EIDL application were "true, correct and complete and are offered to induce SBA to make this Loan[,]" and contained warnings of penalties for misapplication of proceeds and false statements or misrepresentations to the SBA.

11.     On April 22, 2020, CHERRY opened a personal checking and savings accounts, member number (last four digits) 0837, with Langley Federal Credit Union (LFCU) in Norfolk, Virginia.   At the same time, CHERRY also attempted to open a business account, advising an LFCU employee that he owned a business for several years.   Langley Federal Credit Union, headquartered in Newport News, Virginia, is a financial institution (as defined under 18 U.S.C. § 1956) which operates in and the activities of which affect interstate commerce.

4

12.     On April 24, 2020, CHERRY received a $196,900 Automated Clearing House (ACH) wire transfer from the United States Treasury for the EIDL (loan number ending 872-04). The $196,900 proceeds, which were routed electronically in interstate commerce, were deposited into CHERRY's LFCU checking account at LFCU in Newport News, Virginia.

13.     On the same day, April 24, 2020, CHERRY withdrew $34,500 in cash and made a $296.77 purchase at an ABC Store. CHERRY conducted one $500 cash withdrawal at a PNC Bank Automated Teller Machine (ATM) and two $500 cash withdrawals at the LFCU Ward's Corner Branch ATM location, in Norfolk, Virginia. CHERRY then conducted a $33,000 cash withdrawal at the LFCU Old Dominion University (ODU) Branch located in Norfolk, Virginia. CHERRY advised the bank teller he was employed as a general contractor when withdrawing the $33,000. All of these transactions occurred from the LFCU account.

14.     Also on April 24, 2020, at approximately 9:36 a.m., CHERRY changed the mailing address on his LFCU account to an address in Virginia Beach, Virginia. At 5:57 p.m. that same day, CHERRY changed the mailing address back to a Norfolk, Virginia address.

15.     On April 25, 2020, CHERRY attempted to withdraw $9,700 in cash from at the Ward's Corner LFCU branch, but was turned away. CHERRY then returned to the ODU branch and obtained a cashier's check for $70,000, made payable to Global Concepts of Virginia, LLC, and also withdrew $35,000 in cash. These withdrawals all occurred out of the LFCU account (member number ending in 0837). CHERRY falsely advised a bank teller he was purchasing houses at auction and would return to the branch the following day to obtain the remaining $56,000.

5

B.      Second EIDL Application

16.      On April 3, 2020, CHERRY applied for a second EIDL, this time using the business name Contra Surplus LLC (hereinafter "Contra Surplus").      CHERRY listed the business address as 2** West 21st Street, in Norfolk, Virginia, which is a Pak Mail store in which CHERRY maintained a personal box in his name.   CHERRY also falsely indicated he employed five (5) individuals and received gross revenue of $1,600,000 in the past twelve (12) months prior to the disaster, with cost of goods sold of $1,300,000.   CHERRY responded in the negative to a question about whether he had been convicted, plead guilty or placed on any form of parole or probation related to any criminal offense other than a minor vehicle violation.

17.      CHERRY contacted the SBA on or about April 27, 2020, stating he wanted to change the bank account information he had provided.

C.      PPP Application

18.      On April 5, 2020, CHERRY applied for a PPP loan through Readycap Lending, LLC, for Contra Surplus, and requested $35,000 in loan proceeds.   On this application, CHERRY falsely claimed that the business had ten (10) employees with an average monthly payroll of $10,000.   CHERRY claimed that the purpose of the loan was for payroll and lease expenses.

19.      Question 5 of the PPP Borrower Application Form asked "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?"   CHERRY responded "NO" to this question and electronically signed his initials on this documentation, verifying the accuracy of his response.

6



20.     Question 6 of the PPP Borrower Application Form asked "<u>Within the last 5 years,</u> <u>for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been</u> <u>convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; 5)</u> <u>been placed on any form of parole or probation (including probation before judgment)?</u>" CHERRY checked "NO" for this question and electronically signed his initials, verifying the accuracy of his response.

21.     CHERRY electronically signed this PPP application on April 5, 2020, attesting that the information provided was true and accurate and that he understood the criminal penalties associated with providing false statements to the SBA.

22.     According to the Virginia State Corporation Commission, CHERRY registered Contra Surplus on September 26, 2018.   As of January 2, 2020, the business was inactive for not having paid the registration fee.

23.     From on or about at least March 30, 2020 to at least in or about May 2020, in the Eastern District of Virginia and elsewhere, JOSEPH M. CHERRY, II, the defendant herein, devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises and omissions.

24.     The defendant sought to fraudulently obtain disaster-related benefits in the form of SBA-sponsored Economic Injury Disaster (EIDL) loans and an SBA Paycheck Protection Program (PPP) loan.

25.     The defendant submitted   applications for loans under the EIDL and PPP programs that contained false statements, misrepresentations and omissions related to the defendant's income, employment, claimed business entities and his prior criminal record.

7

26.     The defendant falsely attested on the aforementioned loan applications that the information presented was true and accurate.

27.     The defendant opened a bank account at Langley Federal Credit Union (LFCU) for the purposes of receiving EIDL proceeds.

28.     In the course of submitting the aforementioned loan applications and receiving the aforementioned proceeds, the defendant caused the transmission of information and funds by wire between the Eastern District of Virginia and locations outside of the Commonwealth of Virginia.

29.     On or about May 8, 2020, a search warrant was located at the defendant's residence. Among other things, investigators located a LFCU cashier's check for $70,000, made payable to Global Concepts of Virginia, LLC, that represented proceeds of the scheme; a bill of sale and title for a 2000 Sterling Dump truck for $19,000; approximately $13,000 in cash; and a fictitious (fraudulent/forged) City of Virginia Beach Certificate of Business License for Global Concepts of Virginia.

Respectfully Submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:

Brian J. Samuels
Assistant United States Attorney

8

After consulting with my attorney, I hereby stipulate that the above Statement of Facts are true and accurate, and that had the matter proceeded to trial, the United States could prove these facts beyond a reasonable doubt.

JOSEPH M. CHERRY, II
Defendant

I am counsel for JOSEPH M. CHERRY, II.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Lawrence H. Woodward, Jr., Esq.
Counsel for the Defendant

9